**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ADRIANO DE ALMEIDA VIEGAS,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney General,

*Respondent.*

No. 11-1689

On Petition for Review of an Order
of the Board of Immigration Appeals.

Argued: September 19, 2012

Decided: November 19, 2012

Before MOTZ, KING, and WYNN, Circuit Judges.

Petition denied by published opinion. Judge Wynn wrote the opinion, in which Judge Motz and Judge King concurred.

**COUNSEL**

**ARGUED:** Ragan Naresh, KIRKLAND & ELLIS, LLP, Washington, D.C., for Petitioner. Jeffrey Lawrence Menkin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Ritu Kelotra, KIRKLAND & ELLIS, LLP, Washington, D.C., for Petitioner. Tony West, Assistant Attorney General, Civil Division, Ethan B. Kanter, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

WYNN, Circuit Judge:

Adriano de Almeida Viegas, a native and citizen of the Republic of Angola, seeks review of an order by the Board of Immigration Appeals ("BIA") denying his petition to obtain relief from removal under the Immigration and Nationality Act ("INA"). Specifically, the BIA, in adopting and supplementing the decision of the Immigration Judge, denied Viegas asylum and withholding of removal under the INA because he was a member of, and provided material support to, a terrorist organization. On appeal, Viegas argues the BIA and the Immigration Judge erred in finding that the organization to which he belonged, the Front for the Liberation of the Enclave of Cabinda ("FLEC"), is a terrorist organization. Viegas also contends his contributions to the FLEC—paying monthly dues and hanging posters—do not qualify as "material" support. For the reasons discussed below, we deny Viegas's petition for review.

I.

A.

In February 2005, Viegas entered the United States with a fraudulent French passport. A few months later, he filed an

application for asylum, claiming it was not safe for him to return home to Angola. Viegas's application was referred to Immigration Court.

In the asylum proceeding, Viegas stated he was born in Cabinda, an Angolan exclave. Cabinda has suffered from secessionist conflict since 1975. Viegas testified that in 1999, he became a card-carrying member of the FLEC, an organization dedicated to Cabindan independence from Angola. Between 1999 and 2003, he paid a monthly membership fee of fifty Angolan kwanzas to his FLEC contact, Bonga Bonga. Viegas testified that Bonga Bonga supplied him with posters and fliers advocating for Cabindan independence, which Viegas hung on "the walls." J.A. 206. Viegas stated that he did not interact with any other members of the FLEC.

Viegas further testified that in 2003, he participated in a peaceful protest against the Angolan government.[1] At the protest, he was arrested and subsequently imprisoned, interrogated, and beaten by Angolan government officials. Viegas stated that he was released from custody in December of 2004. Two months later, he left Angola for the United States.

The Department of Homeland Security ("Homeland Security") argued that Viegas was ineligible for asylum or withholding of removal under the INA, which bars aliens who are members of terrorist organizations or who have engaged in terrorist activity, including providing material support to terrorist organizations ("Material Support Bar"), from receiving various forms of relief from removal. 8 U.S.C. § 1182(a)(3)(B)(i)(V)-(VI); *id.* § 1182(a)(3)(B)(i)(I); *id.* § 1182(a)(3)(B)(iv). Homeland Security argued that the FLEC is a terrorist organization, submitting reports from the State Department and international organizations including

---

[1]It does not appear that the FLEC was involved in the protest, but after Viegas was arrested, the Angolan government questioned him about his involvement with the FLEC.

Amnesty International and Integrated Regional Information Networks describing the FLEC's human rights abuses. When asked about the reports, Viegas testified that he was "vaguely" aware of military clashes between FLEC factions and the Angolan government and of attacks on civilians by FLEC factions. J.A. 249–50. Viegas stated that the FLEC is not a single organization but a political movement comprised of independent factions. He attributed the violence to only "part of FLEC," stating "FLEC is a peaceful organization." J.A. 252. Viegas denied knowing about the activities of the specific faction to which he belonged.

B.

The Immigration Judge found Viegas's testimony credible but determined that he is ineligible for asylum and withholding of removal. Specifically, the Immigration Judge concluded that the INA's Material Support Bar applies because Viegas paid dues to the FLEC and hung FLEC posters. The Immigration Judge also concluded that the mandatory bar for membership in a terrorist organization applies because Viegas was a member of the FLEC. Nevertheless, the Immigration Judge granted Viegas's request for deferral of removal under the Convention Against Torture, 8 C.F.R. § 1208.17.

On appeal to the BIA from the Immigration Judge's order, Viegas argued that neither the membership nor the material support bar applies to him because he belonged to an independent, peaceful faction of the FLEC, not a terrorist organization. Viegas also argued that the Material Support Bar does not apply to him because his participation in the FLEC was de minimis.

Rejecting Viegas's arguments, the BIA found that the Immigration Judge correctly determined that Homeland Security met its initial burden to show that the FLEC qualifies as a terrorist organization and that Viegas was unable to provide countervailing evidence about a separate faction. The

BIA also found that Viegas's activities "aided the FLEC in continuing its fight against the Angolan government" such that they constituted material support for terrorism. J.A. 15. The BIA stated, "[W]here a group mandated an amount as a membership fee, we would not classify it as *de minimis*." J.A. 15. The BIA noted that although Viegas may have intended to engage only in nonviolent political advocacy, the agency "do[es] not consider the applicant's intent in a determination of whether support is material." J.A. 15. Ultimately, the BIA dismissed Viegas's appeal.[2] Viegas now petitions this Court for review.

## II.

When "the BIA has adopted and supplemented [the Immigration Judge]'s decision, . . . we review both rulings and accord them appropriate deference." *Cervantes v. Holder*, 597 F.3d 229, 232 (4th Cir. 2010). We review factual findings for substantial evidence, which exists unless the record would compel any reasonable adjudicator to conclude the contrary. *Djadjou v. Holder*, 662 F.3d 265, 273 (4th Cir. 2011); *see also* 8 U.S.C. § 1252(b)(4)(C) (stating that "a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law"). We generally lack jurisdiction to review factual findings underlying a denial of asylum under a terrorism bar. 8 U.S.C. § 1158(b)(2)(D). However, under the REAL ID Act, 8 U.S.C. § 1252(a)(2)(D), we may review all constitutional claims and questions of law, which we review *de novo*, but BIA interpretations of the INA are "entitled to deference and must be accepted if reasonable." *Hui Zheng v. Holder*, 562 F.3d 647, 651 (4th Cir. 2009) (internal quotations and citations omitted).

---

[2]Because Viegas was granted deferral of removal under the Convention Against Torture, the BIA remanded Viegas's case to the Immigration Judge to complete the identity, law enforcement, or security examinations required under 8 C.F.R. § 1003.1(d)(6).

### III.

### A.

In his petition, Viegas first contends that the BIA and the Immigration Judge erred in finding that Homeland Security met its burden to show the FLEC qualifies as a terrorist organization. The Immigration Judge credited Viegas's assertion that the FLEC contains many factions, some more violent than others. Although Viegas concedes membership in a faction, Viegas failed to set forth evidence identifying the specific faction to which he belonged.

Viegas argues the BIA erred by placing the burden of proof on him to identify the FLEC faction to which he belonged. Viegas correctly points out that Homeland Security had to present evidence indicating that the membership bar or the material support bar applied. If Homeland Security met this evidentiary burden, however, the burden properly shifted to Viegas to prove that the INA's bars did not apply to him. *See* 8 C.F.R. § 1208.13(c); *id.* § 1208.16(d)(2). Because both the membership and material support bars require that there be a terrorist organization, our first task is to determine whether Homeland Security's evidence satisfied the legal standard for a terrorist organization.

The INA defines a "terrorist organization" as a group so designated by the Secretary of State or an undesignated group ("Tier III") that "engages in, or has a subgroup which engages in" terrorist activity. 8 U.S.C. § 1182(a)(3)(B)(vi)(III). The INA defines "terrorist activity" as

> any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of following:

(I) The hijacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

(II) The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

(III) A violent attack upon an internationally protected person (as defined in section 1116(b) (4) of Title 18) or upon the liberty of such a person.

(IV) An assassination.

(V) The use of any –

(a) biological agent, chemical agent, or nuclear weapon or device, or

(b) explosive, firearm or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

(VI) A threat, attempt, or conspiracy to do any of the foregoing.

*Id.* § 1182(a)(3)(B)(iii).

Here, it is undisputed that at the time of Viegas's membership, many FLEC factions engaged in violence against the Angolan government and civilians and destroyed government property. Nonetheless, Viegas argues that because the FLEC is comprised of factions, it cannot be considered a terrorist

organization as a whole. But even Viegas's own expert testified that "Cabindans . . . rarely distinguished between FLEC factions, rather they attributed most activities in support of independence to a generalized FLEC." J.A. 655. Further, Homeland Security's submissions "indicate 'that most, if not all, of the FLEC factions include military wings [that] engaged in violence. . . .'" J.A. 17.

This evidence sufficiently establishes that Homeland Security met its initial burden to show that the FLEC qualifies as a terrorist organization. Further, there is no dispute that Viegas was a member of at least some component of the FLEC. This is sufficient to meet Homeland Security's burden to present evidence indicating that Viegas was a member of a terrorist organization. Therefore, the burden shifted to Viegas to establish that the INA's bars did not apply to him because he belonged to a separate, nonviolent organization. *See* 8 C.F.R. § 1208.13(c); *id.* § 1208.16(d)(2). Accordingly, we find no error in how the BIA or the Immigration Judge assigned the burden of proof.

## B.

Viegas also argues that the BIA erred in finding that Viegas knew or should have known the FLEC faction to which he belonged was a terrorist organization. For Tier III (undesignated) terrorist organizations, the Material Support Bar does not apply if the alien "can demonstrate by clear and convincing evidence that [he] did not know, and should not reasonably have known, that the organization was a terrorist organization." 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd).

At the asylum proceeding, Viegas testified "[I]f the FLEC is a violent organization or not, I cannot tell you. I . . . never heard. I was – I am against violence." J.A. 206. Viegas repeatedly stated that he knew nothing about his faction's activities. Viegas and his expert testified that fear of the Angolan gov-

ernment prevents Cabindans from openly discussing the FLEC.

Viegas's lack of information about his faction's activities, however justified, does not provide a reasonable basis for believing they were peaceful. Although this lack of information may support Viegas's contention that he did not actually know his faction was a terrorist organization, other evidence supports finding that he reasonably should have known. Indeed, the record shows a person in Viegas's position would know—and Viegas did know—that FLEC factions frequently engaged in unlawful violence. For example, Viegas's expert testified it was common knowledge among Cabindans that the FLEC engaged in military operations against the Angolan government, destroyed government property, and kidnapped government contractors and foreign oil workers for ransom. Viegas admitted that he had heard reports of violence attributed to the FLEC. He testified he distrusted those reports because they came from government-controlled media sources, but he did not testify that he believed all FLEC factions were peaceful.

Given that Viegas admitted to hearing reports about the FLEC's violent activities, his personal opposition to violence and lack of specific information about his faction's methods are unavailing. Even if we were to accept Viegas's contention that he did not know he belonged to a terrorist organization, substantial evidence indicates that Viegas reasonably should have known that the organization he belonged to engaged in terrorist activities.

## C.

Next Viegas contends that even if the FLEC is a terrorist organization, the BIA erred in concluding that his activities constituted material support under the INA. The INA defines engaging in terrorist activity to include acts the alien "knows, or reasonably should know, afford[ ] material support" to a

terrorist organization. 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). "Material support" includes "communications, funds, transfer of funds or other material financial benefit. . . ." *Id.*

There is no question that the type of activity in which Viegas engaged comes within the statutory definition of material support. The issue is whether Viegas's activities qualify as "material." Viegas argues that the BIA abused its discretion in diverging from an earlier unpublished decision defining "material support," *Matter of L-H-* (B.I.A. July 10, 2009). In *Matter of L-H-*, the BIA defined "material support" as conduct that advances terrorism. Viegas contends that his activities cannot qualify under *Matter of L-H-* because they were insignificant and not the type of support that advances terrorism. We disagree.

We first note that because *Matter of L-H-* is unpublished, neither the BIA nor this Court is bound by the decision. *See, e.g.*, *Matter of Echeverria*, 25 I. & N. Dec. 512, 519 (B.I.A. 2011) (stating that unpublished decisions by the BIA "are not binding precedent"). Moreover, Viegas's conduct is distinguishable from the alien's in that case. *Matter of L-H-* involved a single exchange of a small amount of food and money, which the BIA deemed insufficient to constitute material support for terrorism. Here, every month for four years, Viegas voluntarily paid dues and hung posters for the FLEC. As the BIA concluded, the sum of Viegas's dues "was sufficiently substantial standing alone to have some effect on the ability of the FLEC to accomplish its goals." J.A. 15. Accordingly, we reject Viegas's argument that the BIA's material support finding was arbitrary and capricious.

### D.

Finally, Viegas argues that the mandatory bar for membership in a terrorist organization should not apply because he is no longer a member of the FLEC. In affirming the Immigration Judge's application of the bar for membership in a terror-

ist organization, the BIA determined "that the evidence indicates that [Viegas] is a member of" the FLEC and that Viegas provided "no persuasive arguments to support his contention" that he is no longer a member. J.A. 14, 17. The Immigration Judge, however, found only that Viegas "*was* a member of [the FLEC]." J.A. 139 (emphasis added). The membership bar applies to any alien who "*is* a member of a terrorist organization." 8 U.S.C. § 1182(a)(3)(B)(i)(V) (emphasis added). By its plain language, the bar does not apply to aliens who are no longer members of terrorist organizations.[3] Although an Immigration Judge might infer current membership from past membership, 75 No. 8 Interpreter Releases 294, 297 (Mar. 2, 1998), here, nothing in the Immigration Judge's order indicates that he discredited Viegas's testimony that he is no longer a member of the FLEC. Nonetheless, the Material Support Bar is an independently sufficient ground for denying Viegas relief. Therefore, any error on this issue is harmless. *Tassi v. Holder*, 660 F.3d 710, 725 (4th Cir. 2011) (stating error notwithstanding, this Court may "permit a BIA decision to stand if the legal and factual infirmities 'clearly had no bearing on the . . . substance of the decision reached'") (internal citations omitted).

## IV.

In sum, we conclude that the BIA did not err in deeming Viegas statutorily ineligible for asylum and withholding of removal under the INA's Material Support Bar. We therefore deny Viegas's petition for review.

*PETITION DENIED*

---

[3] 8 U.S.C. § 1182(a)(3)(F) excludes admission of aliens who have been associated with terrorist organizations and intend to engage in activities that could endanger the welfare, safety, or security of the United States.