CALLAHAN, Circuit Judge,
concurring in part, dissenting in part:
Our government has the solemn responsibility of protecting the American people from terrorist threats, in addition to implementing our complex' immigration laws. Terrorist threats come from a range of groups and individuals, including violent extremists in the United States and abroad. Accordingly, as part of our country’s counter-terrorism efforts, immigration law provides that where the “evidence •indicates” that an alien may have provided material support to a terrorist group, the alien, not the government, has the burden of proof to show that the terrorism bar does not apply. 8 C.F.R. § 1208.16(d). The government must make this low, initial threshold showing that the “evidence' indicates” the terrorism bar applies.
I would hold that the government has met its initial burden in this case. It’s not clear if the Jemaah Muslim Attaqwa (JMA) is a bona fide terrorist organization, but under these facts and under a deferential standard of review, the government has provided sufficient circumstantial evidence to “indicate” that JMA is a terrorist organization. Budiono is not without recourse, as he may show that the terrorism bar does not apply. The majority’s opinion, however, improperly and unwisely inflates the government’s low threshold. See 8 C.F.R. § 1208.16(d). In doing so, the majority undermines our ability to be vigilant against terrorism.
Even if I were to agree that the government must meet the majority’s high threshold to show that the “evidence indi *1052 cates” that the- terrorism bar applies— which I do not — the proper remedy is a remand, not the outright grant of relief. The majority grants relief to Budiono noting that the BIA has already twice considered whether he was barred from relief and, to the majoidty, both times the evidence was insufficient. However, the IJ and the BIA misunderstood the appropriate allocation of the burden of proof, as the majoiity now redefines it, and did not appreciate the amount of evidence required for the government to sustain its burden. Supreme Court precedent requires that we afford the IJ and BIA the opportunity to apply the correct law to the facts in the first instance. Gonzales v. Thomas, 547 U.S. 183, 186, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (per curiam); INS v. Ventura, 537 U.S. 12, 16-17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). I respectfully. dissent from the majority’s holding that the government has not met, and cannot meet, its burden of proof and the grant of Budiono’s petition for review.[1]
I. The terrorism bar
A brief background about the terrorism bar is appropriate. In the wake of a horrific attack on American soil on September II, 2001, Congress enacted the Uniting and Strengthening America by Providing Appropriate Tools Required to • Intercept and Obstruct Terrorism (USA PATRIOT Act) of 2001. Pub. L. No. 107-56, § 411(c), 155 Stat. 272 (2001), 8 U.S.C. § 1182(a)(3)(B). The Act created a new category of terrorist organizations, a “Tier III” designation. 8 U.S.C. § 1182(a)(3)(B)(vi)(III). A Tier III organization is a terrorist organization beyond those groups formally listed by the U.S. government and includes “a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in,” a terrorist activity. Id. “Terrorist activity” is defined to include an activity “unlawful under the laws of the place where it is committed” and which involves one of six enumerated activities, including the use of any “biological agent, chemical agent, or nuclear weapon or device, or [] explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property [or] [a] threat, attempt, or conspiracy to do any of the foregoing.” Id. at § 1182 (a) (3) (B) (iii).
A person who recruits or solicits funds for a terrorist organization or “commit[s] an act that the actor knows, or reasonably should know, affords material support [to a terrorist organization], including .,. funds ... or other material financial benefit” is deemed to have engaged in “terrorist activity,” unless he “can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the [Tier III] organization was a terrorist organization.” 8 U.S.C. §§ 1182(a)(3)(B)(iv)(IV)(cc), (V)(cc), (VI)(dd).
. These provisions reflect the policy judgments of our elected legislators that terrorism is an evolving and serious threat to national security. See Hussain v. Muka-sey, 518 F.3d 534, 537 (7th Cir. 2008) (“These definitions are broad, but they are not vague.”).
II. The majority gives short shrift to the standard of review.
We review the BIA’s resolution of questions of law de novo. Bojnoordi v. Holder, 757 F.3d 1075, 1077 (9th Cir. 2014). The IJ’s factual findings, including whether the *1053 facts support a finding that an organization is a Tier III terrorist organization, are reviewed for substantial evidence. Id. at 1077-78. Under the substantial evidence standard, “the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B); INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (“To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it.”). Although the majority pays lip service to this standard, it does not follow the standard.
III. Although not conclusive, there is sufficient evidence to “indicate” that JMA is a terrorist organization.
In this case, Budiono conceded remova-bility. Aliens seeking relief from removal must demonstrate eligibility for the relief sought. See 8 U.S.C. § 1229a(c)(4)(A). “If the evidence indicates the applicability of one or more of the grounds for denial of withholding enumerated in the Act, the applicant shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.”[2] 8 C.F.R. § 1240.8(d); I agree with the majority that the “evidence indicates” the applicability of a mandatory bar to relief when it is “sufficient to raise the inference” that the bar applies.[3] Maj. Op. 1048. However, I would find that the evidence here is sufficient to raise the inference that the JMA met the definition of Tier III terrorist organization including the inference-that weapons or other dangerous devices were used.
Budiono was a long-time member of Jemaah Muslim Attaqwa, a group that he admits evolved into a radical, fundamental Islamic organization that advocates violence and the use of force against those who oppose it. JMA members participated in the 1998 Jakarta riots where thousands of people died. People began to fear JMA, including Budiono who testified that members of JMA attacked him and sexually assaulted his wife after he reportedly refused to usé force when raising funds for the group.
The majority requires that the government show that each element of the terrorism bar has been met. But this heightened requirement is contrary to the plain language of the regulation which only requires -that the evidence “indicate” the terrorism bar applies, not that every element must be satisfied. There is no justification to inflate this plainly low threshold. Cf. Viegas v. Holder, 699 F.3d 798, 803 (4th Cir. 2012) (holding that “[e]ven if we were to accept Viegas’s contention that he did not know he belonged'to a terrorist organization, substantial evidence indicates that Viegas reasonably should have known that the organization he belonged to engaged in terrorist activities”). Additionally, it is not a stretch to believe that a radical, violent organization whose members participate in riots, physically attack others, and sexually assault women, uses some weapon in its activities. That Budiono himself was evasive and noncommittal'about how the JMA *1054 enforced its threats is also relevant. Indeed, when the IJ asked Budiono to clarify what he thought JMA meant when they told him to force people to donate, Budiono responded vaguely “They would do whatever they wanted.”
In sum, while there may be no conclusive or direct evidence as to what in-strumentalities JMA has used, Budiono described how the JMA evolved into a radical, fundamental Islamic organization that advocates violence and the use of force against those who oppose it. Accordingly, under the deferential review of the IJ’s findings of fact, I would hold that the government has provided sufficient circumstantial evidence to “indicate” that JMA is a terrorist organization.
IV. Under the majority’s holding, a remand is required as the IJ and BIA erred in interpreting the burden of proof and the amount of evidence sufficient to satisfy that burden.
Even assuming the government’s past evidence was insufficient to indicate that the terrorism bar applied, a remand, not the outright grant of relief is the appropriate remedy. The majority holds that the IJ and BIA erred in discerning the appropriate legal rules to apply in this case. The Supreme Court has held that where the BIA has not yet considered an issue, the proper course is to remand to allow the BIA to consider the issue in the first instance. Gonzales v. Thomas, 547 U.S. 183, 186, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (per curiam); INS v. Ventura, 537 U.S. 12, 16-17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). With few exceptions, if the IJ and the BIA have “applied the wrong legal standard, and ha[ve] not considered the issue using the correct standard,” we remand the case. Fakhry v. Mukasey, 524 F.3d 1057, 1064 (9th Cir. 2008). That is what we should do here.
The majority has adopted a new standard which the IJ and the BIA have yet to apply. First, it holds that the government, not Budiono, had the initial burden to produce evidence with respect to the terrorism bar. The IJ and BIA both assumed that it was Budiono who had the burden of proof.[4] The IJ in his first hearing stated that “[generally the burden is on [Bu-diono] to show that he would not be precluded from relief.” The IJ repeated this standard in his first oral decision by stating “the Court believes that the burden is on [Budiono] to establish ineligibility for any benefit that there are no grounds of ineligibility.” (citing In re Brantigan, 11 I. & N. Dec. 493, 494 (BIA 1966)). The remand by the BIA said nothing with respect to the burden; rather it said that “[u]pon remand the Immigration Judge should also reconsider the issue of [Bu-diono’s] eligibility based on his alleged material support for a terrorist organization” and that the conclusion was “not [at that time] supported by sufficient findings of fact.” The IJ apparently took this as an instruction to describe his findings in more detail, not as a criticism of how he allocated the burden of proof. The reasonableness of the IJ’s approach finds support in the fact that the BIA’s second decision did not discuss the burden of proof.[5]
*1055 However, the majority now holds that the government’s initial evidence “must raise the inference that each element of the bar could be met” including that the JMA used an “explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain)’ in pursuit of its goals.” Maj. Op. 1049 (citing 8 U.S.C. § 1182(a)(3)(B)(iii)(V)(b)). Neither the IJ nor the BIA applied this standard. Rather, the BIA held: “As noted by the Immigration Judge, the fact that [Bu-diono’s] testimony often was vague as to what type of violence was perpetuated by the JMA does not preclude a finding that the group was a terrorist organization.” Indeed, the government argued not that it was not required to offer specific, direct evidence of the type of weapon used. This argument was not. unreasonable as other circuits addressing the terrorism bar have not discussed whether the government’s evidence must raise the inference for each element including that the organization used any “explosive, firearm, or other weapon or dangerous device.” See, e.g., Viegas, 699 F.3d at 802.
Remand is particularly important here because if the government misunderstood the burden of proof, then it should have the opportunity to make its initial showing. For example, the IJ did not make a factual finding as to whether JMA, a subgroup of Jemaah Muslim Islameer, was related to Jemaah Islamiyah, a militant Islamic terrorist group designated by the government as a foreign terrorist organization, and responsible for several bombings and training of terrorists. Because the government may be able to meet the majority’s heightened requirement that it further link JMA to the use of weapons or other in-strumentalities of terrorism, remand is appropriate here.[6] See Thomas, 547 U.S. at 186, 126 S.Ct. 1613; Ventura, 537 U.S. at 16-17, 123 S.Ct. 353; Fakhry, 524 F.3d at 1064.
⅜ ⅜ *
Terrorist organizations do not neatly disclose the extent of their activities. Accordingly, although I agree that the government must first make a threshold showing that the terrorist bar may apply, I would hold that the government has met this low threshold through circumstantial evidence. In any event, the appropriate remedy is a remand, not the outright grant of relief. As the majority holds that the IJ and BIA applied the wrong legal standard and, accordingly, have not considered the terrorism bar using the correct standard, we should remand. I dissent.

. I concur with section III of the opinion that Budiono’s late asylum filing is not excused.

. There is no dispute that the terrorism bar is a mandatory bar to which § 1240.8(d) applies.

. To the extent that the majority analogizes the terrorism bar to other mandatory bars, such as the persecutor bar and the resettlement bar, I am skeptical. The Supreme Court has cautioned us from imputing the reasoning and rationale from one mandatory bar into another noting that "we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.” Negusie v. Holder, 555 U.S. 511, 519, 129 S.Ct, 1159, 173 L.Ed.2d 20 (2009) (internal quotation marks omitted).

. This assumption may have been logical given that Budiono conceded removability.

. The parties’ failure to clearly articulate the burden of proof on appeal further demonstrates that we have adopted a new standard. The government suggested at oral argument that once it satisfied its burden that Budiono had overstayed his visa and was removable, Budiono then had the burden of proof to show he was entitled to withholding of removal notwithstanding the terrorism bar. When asked whether the government had correctly stated the burden of proof, Budiono’s *1055 counsel answered, 'T believe that might be correct.”

. Of course, if the government on remand fails to meet its heightened burden, Budiono will not be prejudiced by the remand as the IJ and BIA will then conclude that the terrorist bar does not apply.