*Vasconcelos v. Lynch*

# In the
# United States Court of Appeals
## For the Second Circuit

————

August Term, 2015

No. 15-1308-ag

RUI GILBERTO ENES DE VASCONCELOS,
*Petitioner*,

*v.*

LORETTA E. LYNCH, UNITED STATES ATTORNEY GENERAL,
*Respondent.*

————

Petition for Review of a Final Order of the Department of Homeland
Security

————

Argued: May 18, 2016
Decided: November 2, 2016

————

Before: KEARSE, JACOBS, and PARKER, *Circuit Judges*.

————

Rui Gilberto Enes de Vasconcelos, a citizen of Portugal and native of Angola, petitions for review of a removal order issued by the Department of Homeland Security without a hearing on the ground that he waived the right to contest removal by submitting via the Electronic System for Travel Authorization ("ESTA") an application to participate in the Visa Waiver Program ("VWP"), 8 U.S.C. § 1187, and subsequently entering the United States pursuant to the program. The ESTA makes available online the I-94W Nonimmigrant Visa Waiver Arrival/Departure Record Form, which memorializes the terms of the program and contains a certification that the applicant waives any right to a hearing. We are asked to decide whether the government may establish waiver based upon an ESTA record showing that a petitioner submitted an ESTA application and thereby certified waiver, or whether, as Vasconcelos urges, it must produce a physically signed I-94W. We hold that an ESTA record is sufficient to establish waiver. Because the administrative record supports the agency's finding that Vasconcelos waived his right to a hearing by submitting an ESTA application and entering the United States pursuant to the VWP, the petition is DENIED.

————

PAUL B. GROTAS, New York, N.Y., *for Petitioner.*

JAMIE DOWD (Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Anthony P. Nicastro, Acting Assistant Director, Tracey N. McDonald, Trial Attorney, Office of Immigration Litigation, Department of Justice, Washington, D.C., *on the brief*), *for Respondent.*

————

BARRINGTON D. PARKER, *Circuit Judge*:

The Visa Waiver Program ("VWP") allows eligible citizens and nationals of designated countries to visit the United States for up to ninety days without obtaining a visa, provided that they agree to waive any right to contest removal other than by seeking asylum. 8 U.S.C. § 1187(a), (b)(2). Prior to 2009, the Department of Homeland Security ("DHS") required applicants to complete and physically sign the I-94W Nonimmigrant Visa Waiver Arrival/Departure Record Form, which memorializes the terms of the program and contains a certification that the applicant waives any right to a hearing. In response to legislation designed to modernize and strengthen the security of the VWP, DHS developed the Electronic System for Travel Authorization ("ESTA"), which makes the I-94W available online and enables applicants to receive an automated determination of eligibility in advance of travel.

Rui Gilberto Enes de Vasconcelos was ordered removed by DHS without the benefit of a hearing on the ground that he waived the right to challenge removal by submitting an ESTA application and subsequently entering the country pursuant to the VWP. We are asked to decide whether the government may establish waiver based upon an ESTA record showing that a petitioner submitted an ESTA application and thereby certified waiver, or whether, as Vasconcelos urges, it must produce a physically signed I-94W. We hold that an ESTA record is sufficient evidence of waiver. Because the administrative record supports the agency's finding that Vasconcelos waived his right to a hearing by submitting an ESTA application and entering the United States pursuant to the VWP, the petition is DENIED.

## BACKGROUND

Vasconcelos is a citizen of Portugal and native of Angola who has resided in the United States since 1989. He last entered the country on June 25, 2012 at the port-of-entry at Champlain, New York on the Canada-United States border. Although the circumstances of his admission are disputed, an ESTA computer-generated record indicates that, approximately two months earlier, he submitted via the ESTA an application to participate in the VWP, in which he provided biographical, passport, and other information necessary to determine his eligibility. The ESTA record also contains an "N" notation next to the field "Third Party Indicator" and a "Y" notation next to the field "Waived Rights," reflecting that Vasconcelos personally filled out and submitted the form and certified that, by participating in the program, he waived any right to challenge removal except by seeking asylum. Admin. R. at 3.

In October 2014, while incarcerated at the Nassau County Correctional Center in East Meadow, New York for failing to pay child support, Vasconcelos was interviewed by an immigration officer. In connection with the interview, he submitted a sworn affidavit acknowledging that he had last entered the United States in June 2012 at the "New York/Canadian border, by bus," using a "Portuguese passport." Admin. R. at 14. An "I-94 Arrival Record" confirmed that he had entered the country on June 25, 2012 as a "Visa Waiver/Tourist (WT)" with an admission expiration date of September 23, 2012. Admin. R. at 44. Based upon this information, the immigration officer concluded that Vasconcelos had entered the United States at Champlain, New York on June 25, 2012 "as a non-immigrant Waiver Tourist (WT) under the Visa Waiver Program (VWP) for a temporary period not to exceed September 23,

2012" and was removable for failing to depart by that date.  Admin. R. at 7.  On March 27, 2015, Vasconcelos was served with an arrest warrant and order of removal that reiterated the immigration officer's findings and noted that he had "waived [his] right to contest any action for removal, except to apply for asylum, having applied for admission under [the VWP]."   Admin. R. at 12. Vasconcelos timely petitioned for review.

## DISCUSSION

We have jurisdiction over final orders of removal, 8 U.S.C. § 1252(a)(1), and may review such orders issued pursuant to § 1187 for the purpose of determining whether the VWP's statutory criteria have been satisfied, *see, e.g.*, *Gjerjaj v. Holder*, 691 F.3d 288, 292–93 (2d Cir. 2012).  We review the agency's factual findings for substantial evidence and will set them aside only if "any reasonable adjudicator would be compelled to conclude to the contrary."  *Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)).  Our consideration of questions of law and the application of law to undisputed facts is *de novo*.  *See Shabaj v. Holder*, 602 F.3d 103, 105 (2d Cir. 2010).

## I.

Congress established the VWP in 1986 to facilitate international travel and tourism, improve relations with friendly nations, and reduce the administrative burdens that result from unnecessary visa processing by authorizing the Attorney General and the Secretary of State to waive the visa requirement for nonimmigrant aliens who meet certain statutory requisites.  *See* 8 U.S.C. § 1187(a); H.R. Rep. No. 99–682, pt. I, at 50 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5654.  To be eligible to participate in the

program, a person must, among other things, be a citizen or national of a designated country who is in possession of a valid, unexpired passport, does not present a threat to national security, and promises to depart the country within ninety days of entry. 8 U.S.C. § 1187(a)(1)–(3), (6).[1] Participants also must agree to waive any right "to contest, other than on the basis of an application for asylum, any action for removal." *Id.* § 1187(b)(2). If a VWP entrant fails to leave the country within the ninety-day time frame (or becomes removable for some other reason), the DHS district director for the jurisdiction in which he is located may order him removed without referring him to an immigration judge for a hearing. 8 C.F.R. §§ 217.4(b), 1208.2(c)(iv). Because a continuously present resident alien has a constitutional right to a pre-removal hearing, *e.g.*, *Landon v. Plasencia*, 459 U.S. 21, 32 (1982), the waiver of that right acts as the "linchpin of the program," *Handa v. Clark*, 401 F.3d 1129, 1135 (9th Cir. 2005), ensuring that the statute accomplishes "Congress's goal of allowing VWP participants expeditious entry into the country but streamlining their removal," *Gjerjaj*, 691 F.3d at 293.

Before 2009, applicants were required to present upon arrival a "completed, signed Form I-94W," which memorializes the terms of the program and collects biographical and other information necessary to determine eligibility. 8 C.F.R. § 217.2(b)(1); *Bayo v. Napolitano*, 593 F.3d 495, 499 (7th Cir. 2010) (en banc). The I-94W also contains a certification that the applicant "hereby waive[s] any right[] . . . to contest, other than on the basis of an application for asylum, any action in deportation."[2] In *Galluzzo v. Holder*, we held

---

[1] Portugal is among the thirty-six designated countries. 8 C.F.R. § 217.2(a).

[2] U.S. Customs and Border Protection, Form I-94W Nonimmigrant Visa Waiver Arrival/Departure Record, *available at* https://www.cbp.gov/sites/default/files/documents/%20I-94W%20English%20%2811-11

that because "we indulge every reasonable presumption against waiver of fundamental constitutional rights," the government cannot rely solely upon a person's status as a VWP entrant to show that he waived his right to a hearing, but rather must offer "explicit evidence of waiver." 633 F.3d 111, 114–15 (2d Cir. 2011) (citation omitted) (emphasis removed). A physically signed I-94W thus played a central role in the program's operation.

In the wake of the terrorist attacks on the United States on September 11, 2001, Congress passed the Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110–53, 121 Stat. 266, in order to "modernize and strengthen the security of the visa waiver program." 121 Stat. 266 § 711(b), 121 Stat. at 338. Unlike visitors who obtain a visa at a consular post overseas before traveling, VWP participants were not screened for entry until they arrived in the United States. *See* Changes to the Visa Waiver Program to Implement the Electronic System for Travel Authorization (ESTA) Program, 73 Fed. Reg. 32,440, 32,441–42 (June 9, 2008). As a result, thousands were turned away at the port-of-entry annually, "causing significant expense, delay, and inconvenience for those aliens, other travelers, and the U.S. government." *Id.* at 32,442. In addition, the security vulnerabilities of such a system created a risk that terrorists and other criminal actors might exploit the program to enter the country. Privacy Act of 1974; Department of Homeland Security/U.S. Customs and Border Protection (DHS/CBP)–009 Electronic System for Travel Authorization (ESTA) System of Records, 79 Fed. Reg. 65,414, 65,414 (Nov. 4, 2014). To address these concerns, the 9/11 Commission Act requires the Secretary of Homeland Security, in consultation with

%29%20FINAL%20%28reference%20only%29.pdf (last visited October 26, 2016).

the Secretary of State, to develop and implement a "fully automated electronic travel authorization system . . . to collect such biographical and other information as the Secretary . . . determines necessary to determine, in advance of travel, the eligibility of, and whether there exists a law enforcement or security risk in permitting, the alien to travel to the United States." 121 Stat. 266, § 711(d)(1)(E), 121 Stat. at 344 (adding 8 U.S.C. § 1187(h)(3)(A)). The Act further provides that "each alien traveling under the [VWP] shall, before applying for admission to the United States, electronically provide to the system" such information. *Id.* § 711(d)(1)(A)(ii), 121 Stat. at 341 (adding 8 U.S.C. § 1187(a)(11)).

Pursuant to these directives, DHS developed and implemented the ESTA, which makes the I-94W available online in twenty-two languages and enables applicants to receive an automated determination of eligibility prior to travel. *See* Official ESTA Application, https://esta.cbp.dhs.gov/esta/application.html?execution=e1s1; Changes to the Visa Waiver Program to Implement the Electronic System for Travel Authorization (ESTA) Program and the Fee for Use of the System, 80 Fed. Reg. 32,267, 32,269 (June 8, 2015) ("ESTA provide[s] for an automated collection of the information required on the Form I-94W . . . paper form . . . in advance of travel."). Under the new system, applicants who intend to travel by air or sea must submit an ESTA application and receive a travel authorization before departing to the United States. *Id.* at 32,267. Applicants who enter the country by land currently need not submit an ESTA application, but if they have an approved ESTA, they may bypass the requirement of completing a paper I-94W at the port-of-entry. *See* Frequently Asked Questions,

https://esta.cbp.dhs.gov/esta/application.html?execution=e1s1. Information submitted via the ESTA is checked against security and law enforcement databases and stored in the system to satisfy the I-94W retention requirement. *See* Privacy Act of 1974; Department of Homeland Security, U.S. Customs and Border Protection – Electronic System for Travel Authorization (ESTA), Systems of Records, 73 Fed. Reg. 32,720, 32,720 (June 10, 2008). An authorization to travel is valid for two years, or until the applicant's passport expires, and may be used repeatedly during that time. 8 C.F.R. § 217.5(d)(1); The Electronic System for Travel Authorization: Mandatory Compliance Required for Travel Under the Visa Waiver Program, 73 Fed. Reg. 67,354, 67,354 (Nov. 13, 2008). Although an approved ESTA expedites the admission process, a determination of eligibility does not mean that a person is admissible; that determination is instead made, as under the pre-ESTA framework, by a Customs and Border Protection officer at the port-of-entry. 8 U.S.C. § 1187(h)(3)(C)(ii); 8 C.F.R. § 217.5(f)(1).

## II.

This petition requires us to resolve whether the government may establish waiver based upon an ESTA record. Vasconcelos contends that, under *Galluzzo*, the government must obtain a physically signed I-94W, notwithstanding the implementation of the new electronic system. The government takes the view that *Galluzzo* is not determinative because it addresses the burden of proof under the pre-ESTA framework and, in any event, the ESTA record is "explicit evidence of waiver," 633 F.3d at 114, because it shows that Vasconcelos submitted an ESTA application and thereby certified that he waived any right to contest removal.

We agree with the government that an ESTA record is sufficient to establish waiver. Nothing in *Galluzzo* requires the production of a physically signed I-94W, even under the pre-ESTA, paper-based system. On the contrary, we reasoned that the government had failed to demonstrate waiver because the record was "silent as to whether Galluzzo signed *or otherwise agreed* to waive his rights to contest removal." *Id.* at 115 (emphasis added); *cf. Bradley v. Att'y Gen.*, 603 F.3d 235, 237-239 (3d Cir. 2010) (finding sufficient evidence of waiver where the petitioner admitted in a declaration that he had signed a form, presented it to a customs officer, and was then admitted into the United States, and the record contained the relevant portion of a handwritten Form I-94W with Bradley's name and date of birth, and the stamped date on which Bradley was admitted). Here, the ESTA record shows that Vasconcelos personally completed and submitted the application and thereby agreed that he waived the right to a hearing. As a record generated by public officials in the ordinary course of their duties, it is presumed reliable and may serve as competent evidence in immigration proceedings. *See, e.g.*, *Felzcerek v. I.N.S.*, 75 F.3d 112, 117 (2d Cir. 1996) (citing Fed. R. Evid. 803(8) to justify reliance on Form I-213).

In any event, we had no occasion in *Galluzzo* to consider what proof of waiver would be appropriate under an electronic application system, and we see no constitutional basis for categorically prohibiting the electronic waiver of rights. *See, e.g.*, *United States v. Luja*, 448 F.3d 86, 88–89, 92–93 (1st Cir. 2006) (rejecting the notion that the defendant's waiver of her right to a jury trial, effected through counsel's electronic signature, was invalid). Indeed, the only other court of appeals to consider the issue

summarily found that the ESTA's electronic waiver was valid. *See Cho v. Att'y Gen.*, 606 F. App'x 574, 575 (11th Cir. 2015) (per curiam). We also did not consider in *Galluzzo* the implications of the 9/11 Commission Act, which was passed, as noted, to modernize and strengthen the security of the VWP by requiring the Secretary to "develop and implement a *fully automated* electronic travel authorization system," 8 U.S.C. § 1187(h)(3)(A) (emphasis added), that enables DHS to collect from all applicants the information necessary to determine their eligibility and security risk in advance of travel, *see id.* § 1187(a)(11). Pursuant to the Act, DHS has included in the ESTA application a certification of waiver – a key requirement for determining eligibility. Were the government precluded from relying upon the ESTA's electronic certification of waiver, it would be impossible for DHS to implement the system envisioned by Congress. Vasconcelos fails to persuade us that the use of electronic certification of waiver such as the one at issue here warrants upending the statutory framework.

Because our case law does not foreclose the use of electronic waiver, we hold that an ESTA record showing that a petitioner submitted an ESTA application and thereby certified that he waived his right to a hearing is sufficient to establish waiver. That does not mean, of course, that an ESTA record is invariably conclusive evidence of waiver. While records generated by public officials in the ordinary course of their duties are presumed reliable, that presumption may be rebutted by evidence that "the sources of information or other circumstances indicate a lack of trustworthiness," or by evidence that contradicts or impeaches the record's contents. *E.g.*, *Felzcerek*, 75 F.3d at 117 (quoting Fed. R. Evid. 803(8)). Vasconcelos gives us little reason, however, to doubt the

reliability of the ESTA record in this case. Although he claims that the government should not be permitted to rely on a "self-serving" computer record, Pet'r's Br. at 11, the fact that the record supports the government's position is irrelevant to its reliability.

Unable to undermine the ESTA record itself, Vasconcelos contends that even if he submitted an ESTA application in which he waived his right to a hearing, he is not constrained by the strictures of the VWP because he did not gain admission to the country pursuant to the program. We recognize that Vasconcelos might not be bound by his waiver if he did not receive the benefit of expedited admission. *See Gjerjaj*, 691 F.3d at 292 ("The VWP offers aliens the benefit of expedited entry as a *quid pro quo* in exchange for a waiver of rights.") (internal quotation marks omitted). We believe, however, that the agency's determination that he entered the country pursuant to the program based upon his ESTA application is supported by substantial evidence. The ESTA record shows that Vasconcelos submitted an application approximately two months before he was admitted on June 25, 2012, Vasconcelos affirmed that he was able to gain entry to the country with a "Portuguese passport" alone, Admin. R. at 14, and the I-94 Arrival Record indicates that he was logged upon arrival as a "Visa Waiver/Tourist," Admin. R. at 44.

Vasconcelos's efforts to undercut the agency's finding do not convince us otherwise. He argues that his ESTA application could not have been approved because it is missing certain requested information, including a foreign address, an address in the United States where he would be residing, a phone number, and airline and flight information. But because none of the missing information is

statutorily required to determine eligibility, it is unclear whether approval was contingent upon its inclusion, and we cannot say on the basis of these omissions that the application could not have been approved.  Vasconcelos also surmises that his application in fact was not approved because the ESTA record includes the notation "Expired" next to the field "Application Status."   Admin. R. at 3. That notation, however, merely reflects that on the date on which the ESTA record was retrieved from DHS's database (June 16, 2015), more than two years had passed since Vasconcelos's application had been approved.  *See* Privacy Act of 1974; Department of Homeland Security, U.S. Customs and Border Protection – Electronic System for Travel Authorization (ESTA), Systems of Records, 73 Fed. Reg. 32,720, 32,724 (June 10, 2008).

Along the same lines, Vasconcelos claims that he could not have participated in the VWP because the administrative record does not contain a copy of his passport and a round-trip ticket, both of which are, in his view, statutory prerequisites for participating in the program.  But we have never required the government to retain proof that a petitioner satisfied each of the statute's numerous requirements for participation at the time of entry. Quite the opposite, we have recognized that a waiver is binding on a person who gains admission under the VWP even if they were ineligible to participate in the program in the first place.  *See Shabaj*, 602 F.3d at 105–06.  At any rate, the record shows that Vasconcelos had a valid, unexpired passport at the time of entry, as the ESTA record includes his passport information and he confirmed in his sworn affidavit that he was able to enter the country using a "Portuguese passport." Admin. R. at 14.  And although the record does not indicate that Vasconcelos had a round-trip ticket, the Secretary has waived that

requirement for participants who, like him, enter the country by land.  *See* 8 U.S.C. § 1187(a)(8); 8 C.F.R. § 217.2(c)(2).

Citing DHS regulations, Vasconcelos alternatively asserts that he could not have participated in the VWP based upon his ESTA application because, as a person arriving by land, he was ineligible to use the electronic system and was required to physically sign an I-94W when he crossed the border.  The provision on which he relies, however, simply states that "[a]n applicant arriving at a land-border port-of-entry will be charged a fee . . . for issuance of Form I-94W." 8 C.F.R. § 217.2(c)(2).  It does not prohibit applicants arriving by land from submitting an ESTA application beforehand and using that submission to satisfy the I-94W requirement, which is precisely what other DHS regulations permit. Frequently Asked Questions, https://esta.cbp.dhs.gov/esta/application.html?execution=e1s1.

Vasconcelos lastly relies on two portions of the administrative record which he believes show that he entered the country using a visa, rather than as a visa waiver tourist.  He points first to the I-94 Arrival Record and claims that only the I-94W is used in connection with visa waiver entrants.   But he offers no support for this contention, and the I-94 provides that "[t]his form must be completed by all persons except U.S. citizens, returning resident aliens, aliens *with immigrant visas*, and Canadian Citizens visiting or in transit."[3]  It would appear, then, that DHS maintains an I-94 and I-94W for persons admitted under the program, so there is nothing unusual about the presence in the record of an I-94.   Indeed,

---

[3] U.S. Customs and Border Protection, Form I-94W Nonimmigrant Visa Waiver Arrival/Departure Record, *available at* https://www.cbp.gov/sites/default/files/documents/%20I-94W%20English%20%2811-11%29%20FINAL%20%28reference%20only%29.pdf (last visited October 26, 2016).

Vasconcelos's own I-94 Arrival Record contains a field for "Visa Class" and indicates that he was admitted as a "Visa Waiver/Tourist." This entry would be nonsensical if VWP entrants were not or could not be assigned I-94 records. *Cf. Mokarram v. Att'y Gen.*, 316 Fed. App'x 949, 950–51 (11th Cir. 2009) (per curiam) (observing that the petitioner's "I-94 Departure Record" contained a "WT" notation, indicating that he had been admitted under the VWP).

Vasconcelos also observes that he was provided with a Form I-826 Notice of Rights and Request for Deposition, which states, "You have a right to a hearing before the Immigration Court to determine whether you may remain in the United States." Admin. R. at 20. By supplying him with this form, he argues, DHS acknowledged that he had entered the country as a visitor entitled to a hearing, and not under the VWP. We are not persuaded. When initiating removal proceedings, the DHS is required by statute to provide an alien with a notice of rights, including the right to a hearing before an immigration officer. 8 U.S.C. § 1229; *see Nolasco v. Holder*, 637 F.3d 159, 163–64 (2d Cir. 2011). The fact that Vasconcelos was provided with the standard notice of the right to a hearing does not mean that he could not have previously waived that right as a condition of entry under the VWP.

While potential irregularities in the administrative record might cause a reasonable adjudicator to conclude that Vasconcelos did not enter the country pursuant to the VWP based on his ESTA application, we cannot say that any reasonable adjudicator would be compelled to reach that conclusion. Because DHS's factual findings are supported by substantial evidence, they are determinative.

Having received the benefit of expedited entry in exchange for a promise of expedited removal, Vasconcelos is bound by the terms of the program and is not entitled to a hearing. *See Gjerjaj*, 691 F.3d at 292.

## CONCLUSION

For the foregoing reasons, and finding Vasconcelos's remaining arguments without merit, the petition is DENIED.