**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1274**

GUSTAVO GABRIEL NARDEA,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of an Order of the Department of Homeland Security.

Argued: September 13, 2017                     Decided: November 29, 2017

Before TRAXLER, DIAZ, and FLOYD, Circuit Judges.

Petition denied by published opinion. Judge Diaz wrote the opinion, in which Judge Traxler and Judge Floyd joined.

**ARGUED:** Adam Nathaniel Crandell, LAW OFFICE OF ADAM N. CRANDELL LLC, Baltimore, Maryland, for Petitioner. David Schor, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeffery R. Leist, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

DIAZ, Circuit Judge:

Gustavo Gabriel Nardea, a citizen of Argentina, petitions for review of a February 26, 2016 Order of Removal issued by the Department of Homeland Security (the "DHS"). Nardea was removed without the benefit of a hearing on the basis that he entered the United States under the Visa Waiver Program and waived his right to contest removal under the terms of that program. Nardea challenges his status as a visa waiver entrant and, in the alternative, the constitutionality of any waiver under the program. We reject both challenges and therefore deny the petition.

I.

Nardea was admitted to the United States on September 30, 2001 at Hartsfield International Airport in Atlanta, Georgia. The record of his entry includes a passport stamp for visa waiver tourists and the completed bottom half of an I-94W Visa Waiver Arrival Form,[1] bearing Nardea's name, birthdate, and country of citizenship. Nardea has remained in the United States since 2001 and does not dispute that he is currently in the country illegally. On February 26, 2016, DHS discovered Nardea in Montgomery County, Maryland and issued a notice of intent to deport. The notice asserted that Nardea had entered the United States under the Visa Waiver Program, exceeded the length of his

---

[1] Both DHS's notice of intent to deport and petitioner's brief refer to Form I-791, which was the predecessor to Form I-94W. *See* Visa Waiver Pilot Program, 56 Fed. Reg. 32,952 (July 18, 1991) (codified at 8 C.F.R. § 217) (replacing Form I-791 with Form I-94W). However, the record indicates that Nardea completed an I-94W Form. We treat the forms as identical for purposes of our review.

2

permitted stay, and waived any right to contest his deportability by executing the I-94W Form. An order of deportation was issued the same day. Nardea timely filed a petition for review.

## II.

We review final orders of removal based on the administrative record considered by the agency and construe findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ." 8 U.S.C. § 1252(b)(4)(A)–(B). Questions of law, including constitutional claims, are reviewed de novo. *Viegas v. Holder*, 699 F.3d 798, 801 (4th Cir. 2012).

Nardea challenges DHS's legal conclusion that he was admitted under the Visa Waiver Program, arguing that the government failed to produce sufficient evidence to support such a determination. Alternatively, Nardea says that any resulting waiver should not be presumed absent production of his signed I-94W Form. Lastly, Nardea contends that to be valid, a waiver of pre-removal hearings must be knowing and voluntary.

Before addressing these arguments, we briefly explain the structure and purpose of the Visa Waiver Program.

## A.

The Visa Waiver Program permits nonimmigrant visitors to enter and remain in the United States for a period of ninety days without first obtaining a visa. 8 U.S.C. § 1187(a)(1). To qualify, the visitor must present a passport from a participating country, possess a round-trip ticket, and waive his or her right to contest the government's removal

3

actions except on the basis of asylum.  8 U.S.C. § 1187(a)–(b).  DHS has implemented this final condition by requiring a visa waiver entrant to "present a completed, signed Form I–94W, Nonimmigrant Visa Waiver Arrival/Departure Form."  8 C.F.R. § 217.2(b)(1).  Completing the waiver form is thus a prerequisite to admission under the program.  *See id.*

Congress created the Visa Waiver Program to "eliminate an unnecessary barrier to travel" and "alleviate vast amounts of paperwork" so that U.S. consular offices could "better meet high priority responsibilities such as visa screening in high fraud areas."  H.R. Rep. No. 99-682, pt. 1, at 50 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5649, 5654.  In exchange for making it easier for visitors to enter the United States, the program relies on a reciprocal waiver from the applicant, ensuring "that a person who comes here with a VWP visa . . . will not raise a host of legal and factual claims to impede his removal if he overstays."  *Handa v*. *Clark*, 401 F.3d 1129, 1135 (9th Cir. 2005).  Waiver is therefore the "linchpin" of the program.  *Id*.

Today, the program is largely carried out online, with air and sea travelers required to obtain a travel authorization, including a certification of waiver, prior to departing for the United States.  8 U.S.C. § 1187(a)(11).  However, at the time Nardea entered the United States in 2001, applicants signed and submitted the I-94W Form upon arrival.  The bottom half of the form was then retained by the visitor, while the immigration official kept the remaining portions, including the traveler's information and the signed waiver.  *See Bradley v. Att'y Gen. of U.S.*, 603 F.3d 235, 239 (3d Cir. 2010) (describing this process).

4

With the goal and procedures of the Visa Waiver Program in mind, we turn first to Nardea's contention that the record does not support DHS's finding that he was properly admitted as a visa waiver tourist. Nardea claims that absent production of his signed I-94W Form, the government cannot carry its burden of establishing by clear and convincing evidence he was admitted under the program. We disagree.

To support its determination that Nardea entered the United States under the Visa Waiver Program, DHS points to Nardea's passport and the bottom portion of his completed I-94W Form. The former bears a stamp in lieu of a visa, which reads "WB/WT For 90 Days Section 217 of the INA" with the letters "WT" circled and the date and place of admission at the top of the stamp. A.R. 10.[2] "WT" is a reference to the nonimmigrant designation of "Visa Waiver, Tourist" while "Section 217 of the INA" refers to the statutory provision creating the Visa Waiver Program. *See* 8 U.S.C. § 1187; 8 C.F.R. §§ 214.1(a)(2), 217. DHS has also produced the bottom half of an I-94W Form, with Nardea's handwritten name, date of birth, and country of citizenship, although it has not produced the signed waiver. Nardea does not dispute that he completed this section of the form, which is used exclusively for visitors under the Program. 8 C.F.R. § 217.2(b)(1). Thus, we conclude that the administrative record is consistent with only one type of entry.

---

[2] The citation to "A.R." references the administrative record submitted to the court in this case. Attached as an appendix to our opinion is a copy of the relevant form, with Nardea's date of birth and passport number redacted.

Relying on two unpublished opinions (involving criminal convictions for illegal reentry following deportation), Nardea argues that the government must produce the signed waiver or obtain a stipulation to prove that he was admitted as a visa waiver tourist. Both cases are inapposite. The first case notes that the petitioner stipulated to his entry into the United States under the Visa Waiver Program, but never holds such a stipulation is required in lieu of producing the signed I-94W Form. *See United States v. Abiola*, 51 F. App'x 456, 457 (4th Cir. 2002). The second case simply states that the petitioner "signed the appropriate waiver form each time he re-entered the United States pursuant to the program." *United States v. Shomade*, No. 97-4172, 1997 WL 592729, at *1 n.1 (4th Cir. 1997) (unpublished). It provides no guidance on what constitutes clear and convincing evidence of entry under the Visa Waiver Program.

Based on the administrative record amassed by DHS, we find that Nardea was admitted under the Visa Waiver Program.

## C.

Nardea next challenges the sufficiency of the evidence supporting DHS's claim that he waived his right to a hearing prior to removal. As a threshold matter, we recognize that while "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application," "once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Thus, in the absence of waiver, Nardea, who has been in the United States for over fifteen years and

6

developed substantial connections to this country, has a right "to a fair hearing when threatened with deportation . . . ." *Id.*

The government contends that because Nardea was admitted as a waiver tourist, he necessarily waived his right to contest removal. Nardea responds by urging us to "indulge every reasonable presumption against waiver of fundamental constitutional rights" and require production of the actual signed waiver. Pet'r Br. at 14 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Nardea concludes that the government's view amounts to the presumption, "entry ergo waiver," which he claims has been rejected by two of our sister circuits. *See Galluzzo v. Holder*, 633 F.3d 111, 114–15 (2d Cir. 2011) (per curiam); *Mokarram v. U.S. Att'y Gen.*, 316 F. App'x 949, 953–54 (11th Cir. 2009).

We read these cases differently. In *Galluzzo*, the government failed to demonstrate waiver because the record was "silent as to whether Galluzzo signed or otherwise agreed to waive his rights to contest removal." 633 F.3d at 115. In a subsequent opinion, the Second Circuit clarified that "[n]othing in *Galluzzo* requires the production of a physically signed I-94W, even under the [prior] paper-based system." *Vasconcelos v. Lynch*, 841 F.3d 114, 119 (2d Cir. 2016). Instead, the requirement is that the government offer some "explicit evidence of waiver." *Id.* at 118. This was lacking in *Galluzzo*, because while the government provided evidence of "Galluzzo's status as a VWP entrant" it failed to establish the consequences of that designation. 633 F.3d at 114.

The decision in *Mokarram,* 316 F. App'x at 954, also focuses on evidentiary failings. There, petitioner entered the United States at the age of twelve accompanied by a family friend. His passport was stamped, and he retained the bottom half of a handwritten

7

I-94W Form but not the signed waiver. *Id*. at 950. Nothing in the record indicated whether Mokarram or a parent or guardian completed this portion of the form, signed any waiver, or were advised that a waiver would result from Mokarram's entry as a waiver tourist. *Id*. at 954. *Mokarram*, however, does not hold that production of the signed I-94W Form is required to find waiver; rather, it rests on the fact "there is no evidence that Mokarram signed a waiver at all." *Id*. at 953.

In the case before us, the government showed that Nardea was properly admitted as a visa waiver tourist and established how it customarily obtains an entrant's waiver. It produced a copy of Nardea's stamped passport and the bottom half of his completed I-94W Form, consistent with a proper visa waiver entry. This distinguishes the present case from *Mokarram*, where the record failed to show that the then twelve-year-old petitioner had been properly admitted as a waiver tourist. 316 F. App'x at 954. The government also provided us with a copy of the I-94W Form and a detailed explanation as to how the visa waiver program operates, making comparisons to *Galluzzo* inappropriate. There, DHS failed to provide the court with a copy of the waiver form or even establish the manner in which it obtains an entrant's waiver. *See Galluzzo*, 633 F.3d at 114–15 (rejecting the government's reliance on mere statutory language to establish it therefore obtained the petitioner's waiver prior to entry).

We think it proper on the record before us to apply the "presumption of regularity [that] attaches to the actions of Government agencies," *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001), such that "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem.*

*Found., Inc.*, 272 U.S. 1, 14–15 (1926).  Under the Visa Waiver Program, DHS is required by law to obtain a visitor's waiver as a precondition to entry.  Thus, where evidence establishes a visitor was properly admitted as a waiver tourist, we may presume (absent clear evidence showing otherwise) that the government necessarily obtained the entrant's waiver to challenge any subsequent removal order.  To hold otherwise would flip the "presumption of regularity" on its head and have us presume that every entry is irregular.

Our approach here accords with those of other circuits, which have relied on the presumption of regularity to conclude the government properly procured a Visa Waiver Program entrant's waiver without producing the signed I-94W Form.  *See Vasconcelos*, 841 F.3d at 119 (concluding DHS computer record indicating petitioner had signed an I-94W waiver is "a record generated by public officials in the ordinary course of their duties, [and thus] is presumed reliable and may serve as competent evidence in immigration proceedings."); *Bradley*, 603 F.3d at 239 ("Because agency action is entitled to a presumption of regularity, we presume that the Department admitted Bradley under the VWP only after collecting the top portion of his completed I–94W form, including his signed VWP waiver.") (internal quotation marks & citation omitted).

In sum, where the evidence is consistent with only one type of entry, and the government has established how it customarily obtains an entrant's waiver, a presumption of regularity regarding the operation of the program, and resulting waiver, is appropriate. Thus, the manner of Nardea's entry, coupled with evidence of the admission process under the program, supports the conclusion that he waived his right to contest his removal before he was admitted to the United States.

9

## D.

Alternatively, Nardea argues that even if he executed a waiver, it is invalid because it was neither knowing nor voluntary. The government disputes that the knowing and voluntary standard applies to visa waiver applicants but says that if it does, Nardea has failed to show that his waiver was unknowing or involuntary, or that he was prejudiced from the allegedly invalid waiver.

To succeed on a procedural due process claim, Nardea must demonstrate "(1) that a defect in the proceeding rendered it fundamentally unfair and (2) that the defect prejudiced the outcome of the case." *Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008); *accord Rusu v. INS*, 296 F.3d 316, 320–22 (4th Cir. 2002). We may find prejudice only "when the rights of an alien have been transgressed in such a way as is likely to impact the results of the proceedings." *Rusu*, 296 F.3d at 320 (internal quotation marks & citation omitted).

We agree with the government that Nardea cannot show prejudice, and thus need not decide if the knowing and voluntary standard applies. Had Nardea been informed fully about the consequences of signing the I-94W waiver, he would be faced with two options, either of which would lead to his removal from the United States. If Nardea had signed the waiver and entered the country, he would be subject to removal without a hearing if (as happened here) he overstayed his visa. Alternatively, if he refused to sign the waiver, he would have been removed summarily at the border. *See Bayo v. Napolitano*, 593 F.3d 495, 506 (7th Cir. 2010) (en banc) (noting that, faced with knowledge of the waiver, the alien would have had two options, either of which would

10

have led to summary removal from the United States); *accord Bingham v. Holder*, 637 F.3d 1040, 1046–47 (9th Cir. 2011) (holding alien seeking admission under the VWP could either sign waiver and be admitted or refuse and be denied entry).

III.

To sum up, we are satisfied that Nardea entered the United States through the Visa Waiver Program. Such entry requires a visitor to waive his or her right to contest deportation on any grounds besides asylum, and we presume such a waiver accompanied Nardea's entry absent some irregularity not shown here. Nardea's claim that the waiver was unknowing or involuntary does not upset this conclusion, as presuming such a standard applies, he cannot show that the outcome of his case would have been different were he fully informed as to the consequences of signing the waiver.

The petition for review is therefore

*DENIED.*

**Departure Number**

**941964733 0-1**

260V    U.S. IMMIGRATION
ATL        4082
ADMITTED

SEP 3 0 2001

Servicio de Inmigración y Naturalización
Formulario I-94W (29-05-91) - Registro de Salida
**EXENCION DE VISADO**

WB (WT) FOR 90 DAYS
SECTION 217 OF THE INA

14. Apellidos

N A R D E D

15. Nombre

G U S T A V O

17. País de nacionalidad

A R G E N T I N A

Visaciones / Visas / Vistos

U.S. IMMIGRATION
260V    ATL
ADMITTED    4082

SEP 3 0 2001

WB (WT) FOR 90 DAYS
SECTION 217 OF THE INA

Visaciones / Visas

29 SET. 2001