**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2162**

EVELYN NTUI TAKANG,

       Petitioner,

v.

WILLIAM P. BARR, Attorney General,

       Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted:  November 15, 2019              Decided:  January 3, 2020

Before AGEE and QUATTLEBAUM, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Petition denied in part, dismissed in part by unpublished per curiam opinion.

Ronald D. Richey, LAW OFFICE OF RONALD D. RICHEY, Rockville, Maryland, for Petitioner.  Joseph H. Hunt, Assistant Attorney General, Stephen J. Flynn, Assistant Director, Lindsay Donahue, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Evelyn Ntui Takang, a native and citizen of the Republic of Cameroon, petitions for review of the Board of Immigration Appeals' ("BIA") order denying her second motion to reopen her removal proceedings. For the following reasons, we deny the petition in part and dismiss it in part.

I.

In December 2002, the BIA dismissed Takang's appeal from the Immigration Judge's ("IJ") order finding her removable and denying her applications for asylum and withholding of removal. Takang's applications were based on her claimed past persecution in Cameroon due to her political beliefs and her role as an activist for the secession of that country's Anglophone regions.[1] The IJ found that Takang's claims were frivolous and not credible, pointing to several discrepancies in her account and her overall demeanor during the deportation hearing, which he described as "non-sincere," "affective," and "evasive." A.R. 401–02. Soon after dismissing Takang's appeal, the BIA denied her first motion to reopen. Takang did not petition this Court for review of either decision.

Over fifteen years later, in September 2018, Takang filed the underlying motion to

---

[1] Following Germany's defeat in World War I, the colony of German Kamerun was divided between France and Great Britain, with the French administering the bulk of the territory and the British controlling the northwest and southwest regions. A.R. 57–64. In 1961, the Anglophone areas gained their independence, with the northwest region opting to join Nigeria and the southwest region reunifying with the already-independent Francophone region. *Id.* Despite this reunification, the Anglophone and Francophone divisions have persisted. A.R. 55, 64–70, 739.

reopen with the BIA, alleging that a material change in conditions in Cameroon affecting members of her proffered social group warranted granting the untimely and number-barred motion to reopen. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); *accord* 8 C.F.R. § 1003.2(c)(3)(ii). The BIA denied Takang's motion for three independent reasons: (1) it did not comply with the BIA's procedural requirements; (2) it was filed outside of the prescribed 90-day time bar and Takang had not submitted sufficient evidence of changed country conditions to qualify for an exception; and (3) this case did not warrant the BIA's exercise of its authority to reopen Takang's deportation proceedings *sua sponte*.

Takang timely filed a petition for review. This Court has jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(2). *See also Gallanosa v. United States*, 785 F.2d 116, 119 (4th Cir. 1986) ("Final agency denial of a motion to reopen in order to apply for suspension of deportation is a final order of deportation reviewable only by a court of appeals[.]").

## II.

### A.

An alien may file one motion to reopen within 90 days of a final order of removal. 8 C.F.R. § 1003.2(c)(2); *see also* 8 U.S.C. § 1229a(c)(7)(A), (C). These limits do not apply if the basis for the motion is to seek asylum or withholding of removal "based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). The alien "bears a 'heavy burden'" of proving that if proceedings were reopened, with all the attendant delays, the newly presented evidence would likely

3

change the result in the case. *In re Coehlo*, 20 I. & N. Dec. 464, 472 (BIA 1992) (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)).

We review the denial of a motion to reopen for abuse of discretion, 8 C.F.R. § 1003.2(a); *INS v. Doherty*, 502 U.S. 314, 323–24 (1992), and afford "extreme deference [to the BIA], given that motions to reopen are disfavored because every delay works to the advantage of the deportable alien who wishes to remain in the United States," *Sadhvani v. Holder*, 596 F.3d 180, 182 (4th Cir. 2009).[2] We will reverse the BIA "only if the decision is arbitrary, capricious, or contrary to law." *Id.* The BIA's decision "need only be reasoned, not convincing." *Lawrence v. Lynch*, 826 F.3d 198, 203 (4th Cir. 2016).

B.

In her petition for review, Takang contends that the BIA (1) abused its discretion in denying her second motion to reopen and (2) violated her right to due process by failing to address the entirety of the evidence she presented.[3] We will address each argument in turn.

1.

The applicable regulations require that "[a] motion to reopen proceedings for the purpose of submitting an application for relief *must* be accompanied by the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2(c)(1) (emphasis added). The record establishes that Takang's second untimely motion to reopen did not

---

[2] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

[3] To the extent Takang alleges that the BIA erred in declining to exercise its authority to reopen the case *sua sponte*, it is well settled that we lack jurisdiction to review such a decision. *See Lawrence*, 826 F.3d at 206–07; *Mosere v. Mukasey*, 552 F.3d 397, 400–01 (4th Cir. 2009) (collecting cases). Therefore, we dismiss this portion of her petition.

4

comply with this requirement. *See* 8 C.F.R. § 1208.4(b)(3)(ii) (stating that an alien who wishes to file an asylum application "[a]fter completion of exclusion, deportation, or removal proceedings" must do so "in conjunction with a motion to reopen pursuant to 8 C.F.R. part 1003 where applicable, with the Immigration Court having jurisdiction over the prior proceeding"). The BIA has made clear that "a failure to submit an application for relief, as required by [8 C.F.R. § 1003.2(c)(1)], will typically result in the Board's denial of the motion." *In re Yewondwosen*, 21 I. & N. Dec. 1025, 1026 (BIA 1997) (en banc). And that is what happened here, as the BIA's order provided that "[Takang's] motion to reopen based upon changed country conditions in her country of nationality and citizenship, Cameroon, is not supported by an application for relief as required by 8 C.F.R. § 1003.2." A.R. 3.

We—along with other courts of appeals across the country—have consistently found that the BIA does not abuse its discretion when it dismisses a motion to reopen because the petitioner failed to comply with its procedural requirements. *See, e.g.*, *Ghosh v. Att'y Gen.*, 629 F.2d 987, 989 (4th Cir. 1980) (holding that "[i]t is not an abuse of discretion to deny a motion to reopen deportation proceedings when the motion" does not comply with the BIA's procedural requirements); *accord Saydur v. Holder*, 597 F. App'x 14, 15–16 (2d Cir. 2015) (per curiam) ("The BIA did not abuse its discretion in concluding that [the petitioner's] failure to include an asylum application with his motion to reopen precluded it from considering his evidence of changed country conditions[.]"); *Majeed v. Att'y Gen.*, 480 F. App'x 146, 148 (3d Cir. 2012) (per curiam) ("Importantly, [the petitioner's] motion to reopen was not 'accompanied by the appropriate application for

relief,' as required by the plain language of § 1003.2(c)(1). Under these circumstances, we cannot say that the BIA abused its discretion in denying the motion to reopen[.]"); *Jiang v. Holder*, 639 F.3d 751, 757 (7th Cir. 2011) (stating that the BIA would be within its discretion to deny a motion to reopen for failure to submit a new asylum application); *Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1064 (9th Cir. 2008) ("The [motion to reopen] . . . was not accompanied by an application for cancellation of removal. . . . Under the circumstances present here, the BIA did not abuse its discretion in determining that [the petitioner] did not satisfy the procedural requirements for [his motion]."); *Waggoner v. Gonzales*, 488 F.3d 632, 639 (5th Cir. 2007) (holding that the BIA did not abuse its discretion in denying a motion to reopen "based upon changed country conditions in Fiji indicating an increased risk of violence against Indo-Fijians" where the petitioner did not submit an appropriate application for relief).

We see no reason to depart from this long line of authority. Therefore, we discern no abuse of the BIA's considerable discretion in denying Takang's motion to reopen and deny this portion of her petition for review.[4]

---

[4] Even if we were to consider the merits of Takang's abuse-of-discretion argument, we would reach the same conclusion. All motions to reopen based on changed country conditions must "state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). "In determining whether evidence accompanying a motion to reopen demonstrates a material change in country conditions that would justify reopening, [the BIA] compare[s] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below." *In re S-Y-G-*, 24 I. & N. Dec. 247, 253 (BIA 2007). "The BIA will reopen asylum proceedings only if the evidence proves that a *relevant* change in country conditions has occurred." *Lin v. Holder*, 771 F.3d 177, 188 (4th Cir. 2014). "Evidence that is largely cumulative of that already in the record does not meet the burden required for reopening." *In re S-Y-G-*, 24 I. & N. Dec. at 253.

2.

Takang's petition also posits that the BIA violated her right to due process by failing to address the entirety of the evidence she included in her second motion to reopen. This argument is meritless.

To be sure, removal proceedings generally are subject to the requirements of procedural due process. *Rusu v. INS*, 296 F.3d 316, 320 (4th Cir. 2002). But because Takang's motion to reopen sought only a "purely discretionary form[] of relief," she possessed no property or liberty interest in it. *See Dekoladenu v. Gonzales*, 459 F.3d 500, 508 (4th Cir. 2006) (characterizing a motion to reopen as seeking a "purely discretionary form[] of relief" and concluding that the petitioner could not claim a due process violation based on the dismissal of his request "to reopen seeking adjustment of status" because it amounted to a purely discretionary form of relief in which he had neither a liberty nor property interest), *abrogated on other grounds by Dada v. Mukasey*, 554 U.S. 1 (2008); *accord Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 869 (11th Cir. 2018) ("[W]e have specifically identified both motions to reopen and adjustment of status as discretionary forms of relief as to which there is no constitutionally protected interest.").

---

Moreover, the BIA has made clear that it is "not inclined to favorably exercise discretion [on a motion to reopen] in the case of an alien, such as the applicant, who was previously found to have offered incredible testimony to gain immigration benefits." *Id.* at 252.

Here, the record abounds with evidence that the intolerance of political dissent, particularly Anglophone opposition, has remained constant before and since Takang's initial removal proceedings in 1998 given the Cameroonian government's long and troubled history of attempting to suppress these political activities. While these conditions are unabated, they are not "changed." The BIA, therefore, did not abuse its discretion in denying the motion as untimely.

Therefore, she had no due process right for the BIA to violate. *See Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002) (holding that in order to make out a due process claim, a claimant must "first establish that he had a property or liberty interest at stake"). As a result, we deny this portion of her petition as well.[5]

III.

Accordingly, we deny in part and dismiss in part Takang's petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid in the decisional process.

*PETITION DENIED IN PART, DISMISSED IN PART*

---

[5] We would reach the same conclusion if we decided the merits of Takang's due process argument. To succeed on such a claim, Takang must demonstrate a procedural defect that rendered the proceedings "fundamentally unfair" and show "that the defect prejudiced the outcome of the case." *Nardea v. Sessions*, 876 F.3d 675, 681 (4th Cir. 2017). We will find prejudice "only when the rights of an alien have been transgressed in such a way as is likely to impact the results of the proceedings." *Id.* But Takang fails to show what evidence the BIA failed to consider and how that evidence would have impacted the results of the proceeding.

Indeed, the record shows that the BIA did all that was required of it here. Though "[t]he BIA may not selectively consider evidence, ignoring that evidence that corroborates an alien's claims and calls into question the conclusion the judge is attempting to reach," it is "not required to discuss every piece of evidence in the record[.]" *Chen*, 742 F.3d at 179. Here, the BIA considered the issues raised and announced its "decision[] in terms sufficient to enable [this Court] to perceive that they have heard and thought and not merely reacted." *Id.* A lengthier decision would not have altered the incontrovertible deficiencies in Takang's motion.