*Blackman v. Garland*

BIA
Ruehle, IJ
A041 764 328

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of February, two thousand twenty-four.

PRESENT:
> **ROBERT D. SACK,**
> **WILLIAM J. NARDINI,**
> **MARIA ARAÚJO KAHN,**
> > *Circuit Judges.*

_____

**BILLYJOE PAUL BLACKMAN,**
> *Petitioner,*

> v.                                                    **22-6228**
>                                                       **NAC**

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
> *Respondent.*

_____

**FOR PETITIONER:**          Matthew K. Borowski, Borowski Witmer Immigration Lawyers, Buffalo, NY.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; David J. Schorr, Assistant Director; Remi Da Rocha-Afodu, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Billyjoe Paul Blackman ("Blackman"), a native and citizen of Guyana, seeks review of an April 13, 2022, decision of the BIA affirming a June 14, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Billyjoe Paul Blackman*, No. A 041 764 328 (B.I.A. Apr. 13, 2022), *aff'g* No. A 041 764 328 (Immig. Ct. Buffalo June 14, 2019). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We have reviewed the IJ's decision as supplemented and modified by the BIA, minus the IJ's alternative determination that Blackman's particular social groups were not cognizable, which the BIA did not reach, and considering the BIA's determination that Blackman waived his CAT claim. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d

268, 271 (2d Cir. 2005). Our jurisdiction is limited to constitutional claims and questions of law because Blackman was ordered removed for an aggravated felony and a controlled substance offense. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), (B)(i), 1252(a)(2)(C), (D).

**I.     Removability**

Whether Blackman's conviction is a drug trafficking aggravated felony or a controlled substance offense under 8 U.S.C. §§ 1227(a)(2)(A)(iii) & (B)(i) and thus a removable offense is a question of law that we review *de novo*. *See Vasconcelos v. Lynch*, 841 F.3d 114, 117 (2d Cir. 2016) (standard of review); *Vargas-Sarmiento v. U.S. Dep't of Just.*, 448 F.3d 159, 164 (2d Cir. 2006) (holding that this Court has jurisdiction to determine whether a conviction is an aggravated felony). The agency did not err in concluding that Blackman's offense is a categorical match to a federal drug trafficking offense.

In determining whether a state conviction is a removable offense, we take a categorical approach, analyzing whether the elements of the state conviction are a categorical match to the elements of the federal offense, "while ignoring the particular facts of the case." *Mathis v. United States*, 579 U.S. 500, 504 (2016); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007) (applying the categorical

approach in the immigration context). If a categorical match exists, the noncitizen has the burden to show "a realistic probability" that the conduct that resulted in his conviction would not be prosecuted under the federal definition and thus that the state law is overbroad. *Moncrieffe v. Holder*, 569 U.S. 184, 191, 206 (2013); *Duenas-Alvarez*, 549 U.S. at 193; *Williams v. Barr*, 960 F.3d 68, 77 (2d Cir. 2020) (explaining that the realistic probability test applies where "the federal and state statutes appear from their texts alone to be a categorical match, but their enforcement may diverge in practice").

Further, in determining whether a noncitizen's conviction is categorically a removable offense, the comparison between the state and federal crimes is made at the time of conviction, "not at the time that his removal proceedings are initiated." *Doe v. Sessions*, 886 F.3d 203, 208 (2d Cir. 2018) ("The Supreme Court, this Court, and the BIA have previously assumed that an alien's removability depends on whether a state drug schedule sweeps more broadly than the [Controlled Substance Act] Schedules in force *at the time of the alien's conviction.*" (emphasis added, internal quotation marks omitted)); *see also Vasquez v. Garland*, 80 F.4th 422, 431 (2d Cir. 2023) (concluding that "Congress intend[ed] legal consequences to attach . . . at the time of adjudication of a crime" (internal

4

quotation marks omitted)).

When Blackman was convicted in 2012, New York Penal Law § 221.55, provided that a person is "guilty of criminal sale of marihuana in the first degree when he knowingly and unlawfully sells one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than 16 ounces." New York defines marihuana as "all parts of the plant of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination." N.Y. Public Health Law § 3302(21) (effective July 10, 2010 to August 26, 2013) (internal quotation marks omitted).

Under federal law, an aggravated felony includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug

trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). "[T]he term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act." 18 U.S.C. § 924(c)(2); *see Lopez v. Gonzales*, 549 U.S. 47, 55, 60 (2006). The Controlled Substances Act ("CSA") provides that a person commits a felony when he**,** "knowingly or intentionally . . . manufacture[s], distribute[s], or dispense[s], or possess[es] with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Federal law defines marihuana as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination." 21 U.S.C. § 802(16).

There is no dispute that the state and federal statutes are a match with respect to mens rea and sale or distribution. *See Pascual v. Holder*, 707 F.3d 403,

405 (2d Cir. 2013) (holding that the New York definition of sale matches the federal definition of distribution). Blackman also concedes that the federal and state definitions of marihuana were "nearly identical" at the time of his conviction, with neither definition including the "mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant" or any mixture of mature stalks. *See* 21 U.S.C. § 802(16); N.Y. Public Health Law § 3302(21). Moreover, his argument that the marihuana definitions do not match because the federal definition excluded hemp following the 2018 passage of the Agricultural Improvement Act is unavailing because the relevant question is whether the definitions matched at the time of his conviction. *See Doe*, 886 F.3d at 208.

Given this apparent categorical match, the burden shifted to Blackman to establish that there was a realistic probability that New York prosecutes for an offense that does not match the federal definition. He has not met his burden. Blackman's argument is that his conviction for 16 ounces of marihuana could fall within the misdemeanor exception in the CSA for "distributing a small amount of marihuana for no remuneration" because of the differences between how New York calculates the weight of marihuana. 21 U.S.C. § 841(b)(4). A "small amount" under the CSA is one ounce or less. *Hylton v. Sessions*, 897 F.3d 57, 59,

7

62 (2d Cir. 2018). Contrary to Blackman's position, both New York and federal law allow for mature stalks of the marihuana plant to be included in calculating the aggregate weight of the drug. *See People v. McCurdy*, 25 A.D. 3d 571 (App. Div. 2d Dep't 2006) (holding that mature stalks did not have to be plucked out in determining whether defendant held more than 16 ounces of marihuana); *United States v. Acosta*, 963 F.2d 551, 555 n.3 (2d Cir. 1992) ("In fact, as to marijuana, Congress has specifically noted that all parts of a marijuana plant are to be considered in the weight calculation; and one likely reason for this is that all parts of the plant may be granulated and sold."); *United States v. Swanson*, 210 F.3d 788, 791 (7th Cir. 2000) (explaining that "stalks of the marijuana plant, although excluded from the guideline definition of marijuana, can still constitute part of a 'mixture or substance' containing a detectable amount of marijuana for the calculation of weight of the controlled substance seized" (internal quotation marks omitted)).

**II.    Relief from Removal**

Because Blackman's conviction is an aggravated felony drug trafficking crime, it bars him from asylum and withholding of removal. An applicant who has committed a particularly serious crime is barred from asylum and withholding

of removal, and an aggravated felony is per se a particularly serious crime for the purposes of asylum.   8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i).

While the conviction is not per se particularly serious for purposes of withholding of removal because Blackman was not sentenced to at least five years imprisonment, the agency has the authority to determine that a crime was particularly serious, and a drug trafficking crime is presumptively a particularly serious crime, regardless of the length of the sentence.   *See id.* § 1231(b)(3)(B)(ii), (iv); *In re Y-L-*, 23 I. & N. Dec. 270, 274 (A.G. 2002), *overruled on other grounds by Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004); *Nethagani v. Mukasey*, 532 F.3d 150, 156–57 (2d Cir. 2008) (agreeing with the BIA's interpretation that an aggravated felony may be a particularly serious crime even if the sentence imposed is less than five years); *Nwankwo v. Garland*, 2022 WL 2297322, at *2–3 (2d Cir. June 27, 2022) (summary order) (holding that drug trafficking is presumptively a particularly serious crime).

Blackman has not challenged the agency's conclusion that he failed to rebut that presumption by demonstrating, among other factors, that his conviction involved "a very small quantity of controlled substance."   *In re Y-L*, 23 I. & N. Dec. at 276–77; *see Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider

9

abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (internal quotation marks omitted)). Nor has Blackman challenged the BIA's conclusion that he waived his CAT claim. *See id.*

### III. Notice to Appear

Blackman further argues that his proceedings should be remanded and terminated because his notice to appear ("NTA") did not contain the time and date of his initial hearing. Before the agency he argued that this defect deprived the agency of jurisdiction. That argument is foreclosed by our caselaw. The Supreme Court has held that such a defect precludes application of the stop-time rule for cancellation of removal, but such a failure does not strip the immigration court of jurisdiction. *See Cupete v. Garland*, 29 F.4th 53, 57 (2d Cir. 2022) (holding that an NTA followed by a hearing notice is sufficient to vest jurisdiction).

The BIA has since held that the requirement that an NTA contain the time and place of a hearing is a claim-processing rule. *See* 8 U.S.C. § 1229(a)(1); *Matter of Fernandes*, 28 I. & N. Dec. 605, 608 (B.I.A. 2022). Claim-processing rules may be mandatory, but they are not jurisdictional and are "subject to waiver and forfeiture." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416, 421, 423 (2023).

10

Blackman's claim processing argument fails because he raises it for the first time here, *see Ud Din v. Garland*, 72 F.4th 411, 419, 420 n.2 (2d Cir. 2023), and he did not object to his NTA before pleadings were complete, *see Fernandes*, 28 I. & N. Dec. at 610–11.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court